JACKSON
v.
M'VEY.

JACKSON, *ex dem.* BROWN AND OTHERS, *against* M'VEY.

Where a person acting in relation to land as executor, and, consistently with his duty as such, permits another to enter upon and occupy the land, he or those who claim under him cannot maintain an action of ejectment against such tenant, and his declarations, claiming the land in his own right, are inadmissible in support of the action, as evidence of title; such declarations being evidence only in relation to the possession.

THIS was an action of ejectment for the recovery of lands in the town of *Wallkill*, in the county of *Orange*. The cause was tried before Mr. J. *Platt*, at the *Orange* circuit, in *September*, 1816.

The lessors of the plaintiff claimed as the children and heirs at law of *William Brown*, deceased, who was the son of *John Brown*, deceased, and produced a deed of quit-claim, in fee, from *John Brown* to *William Brown*, for the premises in question, dated the 13th of *February*, 1801. A witness on the part of the plaintiff stated that *John Brown*, in his lifetime, claimed the land as owner thereof, as the witness supposed, because he threatened to prosecute any person trespassing on it, and did prosecute some persons; that *Daniel M'Vey*, the father of the defendant, entered on the land about six and twenty years before the trial, by permission of *John Brown*, and built a house with his consent, and that he and his family always said that they held the land under *John Brown*. On his cross-examination the witness stated, that *John Brown* was the executor of *Duncan Brown*, his father; that the witness understood from *John Brown* that the lands in question had been sold by *Duncan Brown* to *Duncan Dove*, who had given a mortgage to secure the purchase money. The witness further stated, that *John Brown* claimed the land until the mortgage was paid; and if not paid, as the witness supposed, he claimed the land as his own; and that the eldest son of *Duncan Brown* was *Daniel Brown*, who died long before the revolutionary war, leaving a son and several daughters. The counsel for the plaintiff then offered to prove, by other witnesses, that *John Brown*, in his lifetime, both before and after the entry of *M'Vey*, in his conversations with various other persons, claimed the land as absolute owner. This testimony being objected to, was overruled by the judge. A mortgage from *Duncan Dove* to *Duncan Brown* and his heirs, was produced on the part of the plaintiff. This mortgage was of 209

acres of land, including the premises in question, and was
dated the 23d of *March*, 1753, conditioned for the payment
of 80*l.* on the 22d of *March* following, with interest.    No
evidence was offered on the part of the defendant.

The judge charged the jury, that if they believed from
the evidence, that *John Brown* entered upon the land as
executor of his father, and, as such, permitted the defendant's
father to enter, then the lessors of the plaintiff acquired no
right to the land by descent, nor by the conveyance from
*John Brown*, and they should find for the defendant.    But
if they believed that *John Brown* leased the land, as pro-
prietor, they should find for the plaintiff.    The jury found
a verdict for the defendant, which the plaintiff now moved
to set aside, and for a new trial.

*W. A. Duer*, for the plaintiff.   1. The evidence of the
declarations of *J. Brown* was admissible to show with what
intent he entered, and in what character he held the pos-
session.    The case of *Jackson, ex dem. Youngs*, v. *Vreden-
bergh*, (1 *Johns. Rep.* 159.) is an authority in point.

2. The verdict was clearly against evidence.    (Here
the counsel entered into an examination of the testimony
given at the trial.)

*Betts*, contra.    If the declarations of *J. Brown* are admit-
ted for any purpose, it must be in proof of the plaintiff's
right; and it would follow from the argument of the plain-
tiff's counsel, that a party might recover or make out a title
on the strength of his own mere assertions.    This case is
very distinguishable from that of *Jackson* v. *Vredenbergh.*
That was a case of adverse possession, and the declarations
of the party were connected with marked acts of ownership
which showed the character in which she entered.    In
*Waring* v. *Warren*, (1 *Johns. Rep.* 339—342.) the court
say, that the declarations of the party are not admissible in
evidence, being interested to maintain the possession and
support his title.

2. When evidence is given on both sides, the court w
not grant a new trial on the ground that the verdic
against evidence.    The jury were warranted by the

dence to presume that *J. Brown* entered on the land as exe-
cutor. (*England* v. *Slade*, 4 *Term Rep.* 682. *Hammond* v.
*Wadham*, 6 *Mass. Rep.* 353. *Jackson* v. *Sternbergh*, 1 *Caines,*
163. *Defonclear* v. *Shottenkirk*, 3 *Johns. Rep.* 170.)

*Duer*, in reply, said, there could be no doubt of the ge-
neral rule that the declarations of a party were not evidence
to support his title. The question left to the jury was not
whether *J. Brown* had title, about which there was no doubt,
but whether he claimed to be owner, and with what intent,
or in what character he entered and held the possession ;
whether as owner or as executor of *D. Brown.* Evidence of
his declarations was offered, not to prove that he had, but
that he claimed to have title. If, in leasing the premises to
the defendant, *J. Brown* acted as owner, no matter whether
he was so or not, the lessors of the plaintiff are entitled to
recover. The defendant cannot call in question the validi-
ty of the title under which he entered.

Again ; *J. Brown* could not have held as executor. It is
not a mortgage for years, but in fee, and on the death of *D.
Brown*, the legal estate descended to his heirs at law. But
admitting that he held as a trustee for the heirs or represen-
tatives of *D. Brown*, can the defendant be allowed to avail
himself of that fact, as a defence in this suit ? If he acted as
trustee, the lessors of the plaintiff, if they recovered, would
still hold as trustees, and might be compelled by a court of
equity to convey to the *cestuy que trust*, whose rights cannot
be impaired by the recovery of the plaintiff in this suit. The
defendant ought not to be allowed to set up the rights of the
*cestuy que trust* as an outstanding title.

THOMPSON, Ch. J. delivered the opinion of the court.
The plaintiff moves for a new trial on two grounds, 1st.
That the verdict was against the weight of evidence : 2d.
That the judge improperly excluded evidence offered on the
part of the plaintiff.

The lessors of the plaintiff claimed the premises in ques-
tion as heirs at law of *William Brown*, deceased, who was
the son of *John Brown*, and the question submitted to the
jury was, whether the ownership set up by *John Brown* was

in his own right, or as executor of his father, *Duncan Brown.*
It appeared in evidence that *Daniel M<sup>c</sup>Vey*, the defendant's
father, went into possession under and with the permission
of *John Brown.* The right to recover, as put to the jury,
depended on the question, whether *John Brown*, in this
transaction, was acting in his own right, or as executor of
his father. The jury decided that he was acting in the lat-
ter character; and the verdict is supported by the weight
of evidence.

NEW-YORK,
May, 1818.

JACKSON
v.
M<sup>c</sup>VEY.

The case was submitted to the jury upon the plaintiff's
own evidence; no testimony was offered on the part of the
defendant. From the plaintiff's witness it appeared that
*John Brown* acknowledged that the lands in question had
been sold by *Duncan Brown*, his father, to one *Duncan Dove*,
who had given a mortgage to secure the purchase money.
This mortgage appears to have been given in the year 1753,
to secure the payment of 80*l.* in one year thereafter. It
was proved that *John Brown* said he claimed the land until
the mortgage was paid: this shows very clearly that he was
acting as executor; and this conclusion is much strengthen-
ed by the fact that he was not the heir at law of his father.
His brother, *Daniel*, was the eldest son, and there is nothing
in the case affording any grounds to infer that *John Brown*
had acquired any right from his father, except what grew
out of his executorship. When all that he has done in rela-
tion to the premises is consistent with, and within the scope
of his duty, as executor, it is unreasonable to conclude that
he acted in any other capacity, especially as no colour for
any other claim is shown, independent of his own declara-
tions. These declarations were not admissible as evidence
of title: this is the settled doctrine of this court. In *Jackson*
v. *Shearman*, (6 *Johns. Rep.* 21.) the court say that the ac-
knowledgments of a party as to title, are a dangerous species
of evidence, and though good to support a tenancy, or to sa-
tisfy doubts in cases of possession, they ought not to be re-
ceived as evidence of title. The proof offered was, that
*John Brown* had, in conversation with several persons, both
before and after *M<sup>c</sup>Vey's* entry, claimed the land as absolute
owner. These were not declarations made by him whilst
in possession, and to show the character of his possession

NEW-YORK,
May, 1818.

but declarations as to the title, and as such they were inadmissible. The motion for a new trial must, accordingly, be denied.

Motion refused.